UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-81403-MARRA

JANE DOE, a minor, by and
through GUARDIAN DOE,
her legal guardian,

    Plaintiff,
vs.

SEAGULL INDUSTRIES FOR
THE DISABLED, INC., d/b/a
SEAGULL ACADEMY FOR
INDEPENDENT LIVING,

    Defendant.
_____/

## ORDER AND OPINION DENYING MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss [DE 12]. Plaintiff is a minor in the care and custody of Guardian Doe. Plaintiff has filed a single-count Complaint ("Compl."), alleging a cause of action arising out of 20 U.S.C. § 1681, *et seq.*, also known as Title IX, Education Amendments of 1972 ("Title IX"). She alleges violations of her substantive right of access to the educational opportunities or benefits provided by Defendant, Seagull Industries for the Disabled, Inc., d/b/a Seagull Academy for Independent Living ("Defendant"), as a result of multiple incidents of sexual abuse, battery and harassment by older adult male peers while traveling on a school van operated by Defendant. Plaintiff seeks judgment for all relief available under Title IX, including compensatory damages, punitive damages, attorney's fees and costs.

Defendant has asserted that under Fed. R. Civ. P. 12(b)(6), the Complaint fails "to state a claim upon which relief can be granted." The Court has carefully considered the motion [DE 12]

1

and response [DE 17], and is otherwise fully advised in the premises. No reply has been submitted. The Court finds that Plaintiff has met the applicable pleading requirements and Defendant's motion will be denied.

## I. Introduction

"[A] court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true when it considers a motion to dismiss a complaint under Rule 12(b)(6)." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007) (citing *St. Joseph's Hosp. v. Hospital Corp. of America*, 795 F.2d at 954 (11th Cir. 1986). The following facts are taken from Plaintiff's complaint [DE 1].

Defendant, a Florida corporation, operates a private, charter school for students aged 12 to 22 with learning disabilities and developmental challenges. Plaintiff is a developmentally disabled student who was enrolled with Defendant during 2012 and 2013, when she was between the ages of 14 and 15 years old. Compl. ¶ 6. When Plaintiff was admitted to Defendant, in or about February 2011, the administrators of the school were fully advised and fully aware that Plaintiff: (a) was intellectually disabled (diagnosed with mental retardation); (b) had brain damage as a result of a medical incident as a young child; (c) was speech and language impaired; and, (d) based on the totality of her conditions, had the academic capacity equal to approximately a 1st or 2nd grade level. Compl. ¶ 17. Defendant was supposed to be operated in a manner to meet the individual learning needs of students with developmental challenges and learning disabilities for students aged 12 to 22. Compl. ¶ 8.

Plaintiff alleges she was sexually abused multiple times during 2012 and the spring of 2013 while traveling on a school van operated by Defendant to transport her from her home to the school in the morning, and back home again in the afternoon. Compl. ¶ 9. Each ride was

over 30 minutes in duration. *Id*. The van held 10 students who were supervised by one van driver. *Id*. at ¶ 11. The bus driver did not have the ability to supervise the students and drive simultaneously, nor was the driver aided by video cameras installed in the bus. *Id*. at ¶¶ 13-16. The sexual abuse was perpetrated by older, adult male peers, and included both (i) sexual molestation and sexual battery within the meaning of Florida Statute § 794.011, and (ii) sexual discrimination, harassment, abuse and violence within the meaning of Title IX. Compl. ¶ 10.

Defendant (including its principal) learned of the sexual abuse in May of 2012, when Plaintiff complained of the sexual abuse, but no action was taken. *Id*. at ¶¶ 25, 55. Subsequently, a police investigation concluded that sexual contact had taken place and the school was aware of the sexual contact. *Id*. at ¶ 34. The Florida Department of Children and Families also investigated the matter and reached similar conclusions. *Id*. at ¶ 35. Plaintiff also witnessed other children being sexually abused in the school van, and upon the school learning of the abuse of these other children, Defendant took no steps to investigate the nature and extent of any abuse Plaintiff may have suffered. *Id*. at ¶¶ 39, 42-43.

## II. **Failure to State a Claim**

### A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a defendant may seek to have a claim dismissed when the Complaint "fail[s] to state a claim upon which relief can be granted." The requirements of Fed. R. Civ. P. 12(b)(6) are intertwined with Fed. R. Civ. P. 8(a), which only requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires

3

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

This Court accepts as true all the allegations in the Complaint and construes them in the light most favorable to the Plaintiff when ruling on a motion to dismiss. *Jackson v. BellSouth Telecomms*., 372 F.3d 1250, 1262 (11th Cir. 2004). "[T]he threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is 'exceedingly low.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003) (*quoting In re Southeast Banking Corp., 69 F.3d 1539, 1551 (11th Cir.1995)*). "The sole issue before this Court is whether the complaint, considered through this lens, has sufficient factual matter to state a Title IX claim that is plausible on its face." *Kinsman v. Florida State Univ. Bd. of Trustees*, No. 4:15CV235-MW/CAS, 2015 WL 11110848, at *2 (N.D. Fla. Aug. 12, 2015) ("*Kinsman*").

### B.  Title IX Student-on-Student Harassment Standard

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court held §1681 creates a private cause of action for student-on-student sexual

4

harassment. *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633, (1999) ("*Davis*").  In order to plead a claim under Title IX for student-on-student harassment, a Plaintiff must plead facts to establish the following elements of such a claim:

> First, the defendant must be a Title IX funding recipient.  Second, an appropriate person must have actual knowledge of the alleged discrimination or harassment. Third, the discrimination or harassment—of which the funding recipient had actual knowledge under element two—must be "severe, pervasive, and objectively offensive."  Fourth, the plaintiff must prove the funding recipient acted with deliberate indifference to known acts of harassment in its programs or activities. Fifth, the plaintiff must demonstrate the discrimination or harassment effectively barred the victim's access to an educational opportunity or benefit.

*Hill v. Cundiff*, 797 F.3d 948, 970 (11th Cir. 2015) ("*Hill*") (quotation and internal alterations omitted) (citing *Williams v. Board of Regents of University System of Georgia,* 477 F.3d 1282, 1292–99 (11th Cir. 2007) ("*Williams*")).  Defendant has challenged the sufficiency of Plaintiff's Complaint with regard to the second (actual notice or knowledge), and fourth (deliberate indifference) elements.

### C. Application of Legal Standard

#### 1. Actual Knowledge by Appropriate Person

The United States Supreme Court has stated that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address alleged discrimination and to institute corrective measures on behalf of recipient's behalf has actual knowledge of discrimination in recipient's programs and fails adequately to respond."  *Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 290 (1998).

Defendant argues that the Complaint fails to allege specific facts, beyond conclusory assertions, showing that it had actual knowledge of Plaintiff's sexual abuse.  "Plaintiff's allegations fail to detail when the alleged statements were made or any details about how the statements were communicated to school officials or other appropriate persons; the Complaint

5

contains no specific allegations detailing that an appropriate person was actually notified of any sexual abuse incident and when." DE 12 at 11.  While lacking the kind of details necessary to prosecute or defeat a summary judgment motion, we are at the motion to dismiss stage where all reasonable inferences are properly made in Plaintiff's favor, and Plaintiff does allege approximate time frames for key events.  In addition, Plaintiff alleges repeatedly that Defendant had knowledge of important facts prior to the abuse.  For instance, Plaintiff alleges

17. When Plaintiff was admitted to Defendant's Academy *in or about February 2011*, "*the administrators of the school were fully advised and fully aware* that Jane Doe: (a) was intellectually disabled (diagnosed with mental retardation); (b) had brain damage as a result of a medical incident as a young child; (c) was speech and language impaired; and (d) based on the totality of her conditions, had the academic capacity equal to approximately a 1st or 2nd grade level" (emphasis added).

18. When Plaintiff was admitted to Defendant's Academy *in February 2011*, "the *administrators of the school had full access to and knowledge* of her prior Individualized Education Plans (IEP) pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.*, and itself developed and authored IEP's thereafter" (emphasis added).

Plaintiff sets forth various allegations concerning her developmentally-based socialization problems that were described in her IEPs (as of April 2011) that put Defendant on actual notice *before the subject abuse occurred*. *See* [DE 1 at paragraphs 19 – 21, 23 and 24]. Various notes in Defendant's records reveal that it knew before the subject abuse occurred that Plaintiff was specifically vulnerable to abuse by males, including sexual abuse, and that she was unable to handle social relationships safely without responsible adult supervision when around male peers.  For instance, in paragraph 19, Plaintiff alleges that Defendant knew she had

difficulty in "speaking up for herself," and that Defendant specifically recorded in her educational records that this problem related to her "self-advocacy regarding boys." In paragraph 20, Plaintiff alleges Defendant's records state that her disabilities specifically included "significant cognitive deficits [that] interefere[d] with [her] … social, communication … development;" that her IEP skill assessments included that she "needs to work on speaking up for herself;" and her objectives included learning how to "verbalize and practice safe interpersonal skills with peers . . . " In paragraph 21, Plaintiff alleges that in both April and October 2011, Defendant documented in her educational records that she required "daily counseling or specific instruction on social or emotional behavior (*e.g.*, self-regulator behavior, self-advocacy, conflict resolution, dealing with authority, socialization.)" In this regard, Plaintiff was found by Defendant to "require[] daily personal assistance, monitoring and/or intervention." Paragraph 22 alleges that her IEP reported that Plaintiff "needs to work on building appropriate friendships and learning the difference between different types of relationships." Among her IEP objectives included to "learn and verbalize the importance of boundaries in various types of relationships." In paragraph 23, Plaintiff alleges that Defendant knew that these socialization problems were not new or passing problems, but rather were persistent problems. Prior to the subject abuse occurring, each of her IEP's and psychological evaluations, dating back to elementary school, to which Defendant had notice and were part of her educational records on file with the school, identified persistent peer interaction difficulties, shyness (to the level of being "extremely shy,") and a "reluctance to seek help." It was similarly noted that she was easily influenced by her peers. Paragraph 24 alleges that, "[h]er [guardians] share the team's concerns about [her] behavior around boys, despite her understanding of potential consequences." Plaintiff alleges in paragraph 25 that Defendant "was well aware of the need to

7

have [Plaintiff] properly supervised and protected from older male peers while traveling on the school bus in May 2012, *when [Defendant's] officials, including its principal, noted in educational records that [Plaintiff] had alleged sexual abuse by a specifically named male peer*" (emphasis added). Plaintiff adds in paragraph 34 that the police "made a specific finding during their investigation that the school's principal admitted that direct sexual contact had occurred between [Plaintiff], then just 14 years old, and a male student on the bus." In paragraph 35 of the Complaint, Plaintiff alleges that the Florida Department of Children and Families (DCF) also investigated the case after the delayed referral to law enforcement and in its investigation found that, on multiple occasions, Plaintiff had been coerced into sexual activity on the school bus, including oral and vaginal sexual battery perpetrated by a male student who was at least 17 years old and that concerns of such sexual abuse had persisted for as long as a year. In paragraph 36 it is alleged that "DCF expressly found that there was no adult monitor on the bus, thus allowing the abusive activity to occur while the driver was distracted with driving."

The Court finds the above referenced allegations sufficiently allege that school officials and the principal, undisputedly an "appropriate person,"[1] had actual knowledge of the abuse Plaintiff alleges occurred. Therefore, Plaintiff has successfully alleged that an "appropriate person" had actual knowledge of the harassment Plaintiff alleges occurred.

---

[1] "Like the majority of our sister circuits, [the 11th Circuit has] not hesitated in concluding that principals, as the highest ranking school officials present at schools every day, are 'high enough on the chain of command to impute liability to the School Board.'" *KB v. Daleville City Bd. of Educ.*, 536 F. App'x 959, 962–63 (11th Cir. 2013) (quoting *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1253 (11th Cir. 2010). In addition, actual knowledge by school "administrators" has been found to constitute actual knowledge on the part of the School Board for purposes of a victim's Title IX claim. *See Doe v. Sch. Bd. of Palm Beach Cty.*, No. 15-CV-80175 2015 WL 4698462, *4 (S.D. Fla. June 2, 2015); *Burch v. Young Harris Coll.*, No. 2:13-CV-64-WCO, 2013 WL 11319423, *6 (N.D. Ga. Oct. 9, 2013).

### 2. Deliberate Indifference

"Under Title IX, recipients can only be held liable in a private damages action where their own deliberate indifference effectively causes the discrimination." *Hawkins v. Sarasota Cty. Sch. Bd.*, 322 F.3d 1279, 1284 (11th Cir. 2003) (citing *Gebser*, 524 U.S. at 292-293). For "acts of student-on-student harassment" a Title IX funding recipient is deliberately indifferent when "the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. "A clearly unreasonable response causes students to undergo harassment or makes them more vulnerable." *Hill*, 797 F.3d at 973 (citing *Williams,* 477 F.3d at 1295-96). Ultimately, did Defendant's "deliberate indifference to the initial discrimination subject[] the plaintiff to further discrimination[?]" *Williams,* 477 F.3d at 1296. Defendant's indifference must amount to "an official decision by the recipient not to remedy the violation." *Gebser*, 524 U.S. at 290. The Complaint meets this standard.

"Deliberate indifference is based on how a funding recipient responds to *known* circumstances." *Doe v. Bibb Cty. Sch. Dist.*, 126 F. Supp. 3d 1366, 1378 (M.D. Ga. 2015). Plaintiff pleads in paragraph 25 that Defendant was well aware of the need to have Plaintiff properly supervised and protected from older male peers while traveling on the school bus in *May of 2012, when Seagull Academy officials, including its principal*, *noted in educational records that Jane Doe had alleged sexual abuse by a specifically named male peer*. Rather than protect her from further abuse, the allegation was discounted and no appropriate and necessary action taken to protect Plaintiff from further abuse and to ensure she received necessary care to recover from what she had already suffered (emphasis provided, *see, also*, Compl. ¶ 55).

Plaintiff sufficiently alleges that Defendant had actual knowledge of sexual abuse committed on Plaintiff in May 2012, and that the abuse continued until the spring of 2013. Despite this knowledge, Defendant took "no appropriate and necessary action to protect" Plaintiff [DE 1 ¶ 25]. Defendant did not inform the police, the Plaintiff's guardian or child welfare of the sexual abuse. *Id*. at ¶ 26. When a police investigation commenced, Defendant initially attempted to thwart the investigation by blaming Plaintiff as the instigator of the sexual activity and calling her a "liar." [*Id*. at ¶¶ 28-39].

Plaintiff alleges Defendant's deliberate indifference to the initial report of abuse subjected Plaintiff to further harassment and abuse. For instance, the delay in reporting the sexual abuse suffered by Plaintiff also delayed the commencement of necessary mental health treatment which proximately resulted in Plaintiff's suffering undue and aggravated mental harm, including a deepening of psychic injuries, promoting the development of intractable long-term mental health damage that could have been avoided or mitigated with more timely medical intervention. *Id*. at ¶ 27.

Moreover, Plaintiff alleges that after receiving notice of the sexual abuse, Defendant made no effort to separate the Plaintiff from the abuser/s. See *Kinsman*, No. 4:15CV235-MW/CAS, 2015 WL 11110848, at *4 (finding "the possibility of further encounters 'between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities'"). In addition to knowledge of the sexual abuse of Plaintiff, Plaintiff alleges that Defendant knew of other instances of sexual abuse against other students and still did nothing. [*Id*. at ¶¶ 39, 42-43.] Plaintiff pled that despite, actual knowledge of ongoing sexual abuse at the school, Defendant failed to:

(i) restrict or control interaction between adult male students and minor students with developmental challenges and learning disabilities, especially females, at the

[Defendant's school]; (ii) adequately supervise and monitor such interaction between populations of the school to protect vulnerable children; (iii) respond to reports and incidents of inappropriate acts or sexual misconduct by adult male students; (iv) implement policies to prevent student-on-student sexual violence, harassment and assault; (v) adequately train teachers and staff in the prevention of student-on-student sexual violence, harassment and assault; (vi) adequately train the drivers of the school bus/vans to supervise and protect the special needs students effectively while in the vehicle, including without limitation, student seating assignments based on gender, age and particular needs; (vii) acquire or utilize appropriately equipped school bus/vans which permit the driver during transit to clearly and sufficiently monitor and view all students in the vehicle, specifically those in the rear seats, through the use of mirrors, video cameras, and/or other effective means of surveillance; (viii) assign or otherwise provide on the school bus/vans a responsible adult monitor to ensure adequate safety and discourage abusive behavior by older and adult students against younger students; (ix) take steps to protect children at the [Defendant's school] from sexual violence, abuse and harassment by adult male students; and/or (x) implement any such other actions, policies or measures reasonably intended and designed to protect [Plaintiff] and other minor females from sexual violence, abuse, harassment and battery. [*Id.* at ¶ 60.]

Drawing all reasonable inferences in favor of Plaintiff, it is reasonable to conclude that Defendant's deliberate indifference had a "concrete, negative effect" on Plaintiff's ability to receive an education. *See, e.g., Hill v. Cundiff,* 797 F.3d 948 (11th Cir. 2015). Although deliberate indifference and denial of access to an educational opportunity or benefit are separate elements, the Eleventh Circuit in *Hill* cited the same type of conduct it found to constitute "further discrimination" in *Williams* was also clearly unreasonable conduct that effectively prevented the plaintiff from continuing to attend her school. *Id.* at 975-976 ("further discrimination" can be a response on the part of the funding recipient that is so ineffective it bars the victim's access to educational opportunities). Plaintiff has set forth a plausible showing of entitlement to relief for sexual harassment in violation of Title IX.

### III. CONCLUSION

In accordance with the conclusions and findings herein, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss the Complaint [DE 12] is denied. Defendant shall file its answer within 14 days of the date of this Order and Opinion.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of August, 2016.

KENNETH A. MARRA
United States District Judge